# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

------------------------

Nº 06-CV-6169 (JFB) (WDW)

------------------------

REINA RAMIREZ,

Plaintiff,

VERSUS

TERRY RIFKIN & LEAH RIFKIN,

Defendants.

------------------------

MEMORANDUM AND ORDER
June 23, 2008

------------------------

JOSEPH F. BIANCO, District Judge:

Plaintiff Reina Ramirez (hereinafter, "plaintiff" or "Ramirez") brought this action against Terry and Leah Rifkin (hereinafter, "defendants") pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York State Labor Law, N.Y. Labor Law § 190, *et seq.* ("NYLL"). Plaintiff alleges that the defendants failed to pay wages and overtime pay under federal and state law.

Defendants now move for summary judgment on the claims against them pursuant to Fed. R. Civ. P. 56(c). Specifically, defendants argue that (1) the applicable statute of limitations under the FLSA is two years, and (2) the undisputed facts establish that the defendants paid plaintiff the applicable wages. As set forth below, the Court grants in part and denies in part defendants' motion.

I. BACKGROUND

A. Facts

The facts described below are taken from the parties' depositions, affidavits, exhibits and defendants' Local Rule 56.1 statement of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 54-55 (2d Cir. 2005).

Plaintiff was employed as a domestic worker in the defendants' home from June

1

1993 until her termination on December 8, 2005. (Defs.' 56.1 ¶ 1; Ramirez Dep., dated Sept. 17, 2007, at 25, 113-14.) [1]

1. Pre-2003 Work Hours

From June 1993 to mid-2003, plaintiff worked from Tuesday morning to Saturday night, sleeping in defendants' home on those nights and returning to her own home in the Bronx for her days off – Sunday and Monday. (Ramirez Dep., at 33.) Plaintiff argues that during these first ten years of her employment, plaintiff would arrive at work on Tuesday morning between 8:30 a.m. and 9:00 a.m., and would return home Sunday morning between 6:00 a.m. and 7:00 a.m. (*Id.* at 32.) Plaintiff further argues that on Wednesday, Thursday, Friday, and Saturday, she would start working around 6:30 a.m. each morning, preparing snacks for the Rifkin children, arranging for their breakfast, and making coffee for Leah Rifkin and herself. (*Id.* at 47, 49.) After the children left, plaintiff began her cleaning, laundry, and cooking duties, which she continued throughout the day. (*Id.* at 50-51.) Plaintiff alleges that she ended her workday around 9:00 p.m. each night during this time frame. (*Id.* at 49.)

2. Post-2003 Work Hours

From the summer of 2003 until December 8, 2005, plaintiff's schedule changed and she began returning to her home in the Bronx on most evenings except for Friday.

---

[1] Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact or has offered no evidence to controvert that fact.

Defendants argue that, while plaintiff worked for the defendants between the summer of 2003 and December 8, 2005, plaintiff arrived at work between 8:30 a.m. and 9:00 a.m., and left work between approximately 4:30 p.m. and 5:30 p.m. on Tuesday, Wednesday, Thursday, and Friday. (*Id.* at 35-36, 64.) Plaintiff disputes this fact, and instead contends that she arrived at work between 8:30 a.m. and 9:00 a.m. on Tuesday, Wednesday, Thursday, and Friday, and left work between 4:30-5:30 p.m. on Tuesday, Wednesday, and Thursday only. (*Id.* at 33, 35-36, 48, 63-64.) Plaintiff also asserts that she sometimes arrived at work as early as 8:00 a.m. (*Id.* at 137.) On Fridays, plaintiff contends that she continued to work past 5:30 p.m. to prepare the food for the family's Friday Sabbath dinner and Saturday lunch, cleaned up after those family meals, slept at defendants' home on Friday nights, and left for her own home in the Bronx on Saturday afternoon. (*Id.* at 33, 35, 48, 64.) Plaintiff also points to evidence that she slept at defendants' home on some Tuesday, Wednesday, and Thursday nights "[i]f she was needed." (Leah Rifkin Dep., at 57.)

Defendants contend that, during her work day, plaintiff took a break from work of one hour, and also had a breakfast or coffee break in the morning and a lunch break between 2:00 p.m. and 3:00 p.m. each day. (Ramirez Dep., at 56-57, 60-62, 128-129.) Plaintiff disputes that she had a breakfast or coffee break in the morning and contends that at breakfast time, she would briefly stop work to drink a cup of coffee and occasionally eat a snack around noontime while continuing her work. (*Id.* at 60-63.) Plaintiff also contends that she sometimes took a break of approximately

2

one hour in the afternoon to both eat a meal and to rest, although she was not always able to take this break because of her work. (*Id.* at 56-57, 60-63, 121, 127-28, 153-54.) Plaintiff further contends that some of her breaks were interrupted in order to return to her duties at the defendants' request. (*Id.* at 57.)

Moreover, plaintiff asserts that, when she slept overnight at defendants' home, she slept in a room off of the kitchen, next to the laundry room. (Leah Rifkin Dep., at 140-41.) She claims this room was also a work area for plaintiff, where she folded laundry and ironed clothes for defendants, and where clean laundry was stored. (Ramirez Dep., at 79; Leah Rifkin Dep., at 141.)

Plaintiff maintained her own apartment in the Bronx throughout her employment with defendants. (Pl.'s 56.1 ¶ 14.) Plaintiff stayed at her own home when defendants took vacation. (*Id.*)

### 3. Wages, Benefits and Payments Provided to Plaintiff

Defendants paid plaintiff a flat rate in cash on a weekly basis. (Leah Rifkin Dep., at 133.) Plaintiff was paid $360 a week for her work with the defendants in 2002 and 2003. (Defs.' 56.1 ¶ 2.) Defendants increased plaintiff's pay to $380 a week in 2004, and to $400 a week in the fall of 2005. (*Id.*) Defendants did not pay plaintiff overtime compensation. (Terry Rifkin Dep., at 19.)

The Defendants also took vacations during the time that plaintiff worked for them, but would always pay plaintiff her full weekly compensation even though the plaintiff performed no work during that period of time. (Defs.' 56.1 ¶ 6.)

Moreover, during the period of time that plaintiff performed work for the defendants, plaintiff was permitted to, and did, make international telephone calls to her home in El Salvador, which were paid by the defendants at no cost to the plaintiff. (Defs.' 56.1 ¶ 7.) Plaintiff does not dispute this, but adds that at some point during her employment she bought her own phone card to make some of these calls. (Ramirez Dep., at 147-48.) The record shows that, between mid-2003 and December 2005, plaintiff made five phone calls to El Salvador. (Pfitsch Aff., Exh. J ("Phone Records").)

Finally, during the time that plaintiff performed work for the defendants, plaintiff was permitted to, and did, eat meals comprised of any food that defendants had in their home. (Defs.' 56.1 ¶ 8.) This food was the same food that was available to defendants, and plaintiff could eat it without limitation. (*Id.*) Plaintiff does not dispute this, but adds that defendants maintain a kosher home, and that she was not allowed to bring her own food into defendants' home. (Ramirez Dep., at 149-50.)

On December 8, 2005, defendants terminated plaintiff. (Defs.' 56.1 ¶ 10.) Defendants contend that, at that time, they paid plaintiff severance pay in the sum of $1,000, in addition to their usual weekly payments to plaintiff. (Terry Rifkin Dep., at 69.) Plaintiff does not dispute the fact that the payment was made or the amount of the payment. However, plaintiff contends that, when she was fired, Terry Rifkin gave her the money and said it was a Christmas gift. (Pl.'s Interrog., Exh. E ¶ 4.)

3

### 4. Payroll Records

Defendants did not maintain any payroll records for plaintiff, withhold taxes from her wages, report her wages on their own taxes, provide plaintiff with a W-2 or 1099 tax form, or post or provide information about employment laws. (Ramirez Dep., at 191; Leah Rifkin Dep., at 149-53, 155-56; Terry Rifkin Dep., at 57, 59-65.) Defendants instead calculated plaintiff's hours and wages in their heads and did not maintain any records of her pay or her hours. (Leah Rifkin Dep., at 135-38, 149-53; Terry Rifkin Dep., 19-20, 53-54, 62-65, 89-91.) Plaintiff contends that defendants claim to have considered plaintiff an independent contractor instead of an employee – for tax purposes – yet did not provide her with a 1099 form. (Leah Rifkin Dep., at 156; Terry Rifkin Dep., at 63-64.)

Moreover, between 1999 and 2004, plaintiff filed federal income tax returns in which she declared much less than her actual earnings. (Defs.' 56.1 ¶ 11.) Defendants contend that she did so because she understood that by putting a lower amount of earnings on her tax returns she would pay less tax, and she engaged in that conduct because the plaintiff believed it was appropriate to do so "according to the needs of [her] family." (Ramirez Dep., at 181-89.) Plaintiff does not dispute that she declared less than she believed to be her actual earnings. However, she contends that defendants did not withhold employment taxes from her wages and did not provide her with the required W-2 form for her to file taxes. (Ramirez Dep., at 191; Leah Rifkin Dep., at 156; Terry Rifkin Dep., at 62-64.) She further argues that her tax preparers advised her to declare her income in relation to the amount of tax she could afford since she did not have a W-2 form. (Ramirez Dep., at 181-83, 185-89.)

### B. Procedural History

Plaintiff filed a complaint in the instant case on November 17, 2006. On March 3, 2008, defendants moved for summary judgment on all of plaintiff's claims. Oral argument was held on June 6, 2008.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id*. at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

### III. DISCUSSION

#### A. Statute of Limitations

As a threshold matter, defendants argue that the two-year statute of limitations for a violation of the FLSA bars any claim for wages and overtime that accrued prior to November 17, 2004.

A suit under the FLSA must be commenced within two years after the cause of action has accrued, unless a plaintiff can show that a defendant's violation of the Act was willful, in which case a three-year statute of limitation applies. 29 U.S.C. § 255. For an employer's actions to be willful, the employer must have "either [known] or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Courts in this Circuit have generally left the question of willfulness to the trier of fact. *See, e.g., Kaur v. Royal Arcadia Palace, Inc.*, No. 05 Civ. 4725, 2007 WL 4591250, at *14 (E.D.N.Y. Dec. 27, 2007) (denying summary judgment as to willfulness where plaintiffs complained about their pay); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2005 WL 1214337, at *2-*3 (S.D.N.Y. May 20, 2005) (denying motion to dismiss as to willfulness where plaintiffs alleged defendants knew the requirements of FLSA and deliberately misclassified them as independent contractors); *Vaicaitiene v. Partners in Care Inc.*, No. 04 Civ. 9125 (RMB) (THK), 2005 WL 1593053, at *7 (S.D.N.Y. July 6, 2005) (finding willfulness to be a question for the trier of fact); *Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (same).

Although defendants argue that the plaintiff cannot cite to a single fact to reflect that the defendants acted with either knowledge or with recklessness to justify the application of a three-year statute of limitations instead of a two-year, the Court disagrees. First, defendants admitted that

5

they did not maintain the employment records for plaintiff. Instead, defendants paid her a flat rate on a weekly basis in cash with no receipts. (Leah Rifkin Dep., at 133, 152; Terry Rifkin Dep., at 61.) Second, defendants did not withhold employment taxes from plaintiff's wages or report the wages they paid to her on their tax returns. (Leah Rifkin Dep., at 155-56; Terry Rifkin Dep., at 57, 63.) Third, defendants did not provide plaintiff with W-2 forms. (Leah Rifkin Dep., at 153, 156; Terry Rifkin Dep., at 61-63.) Finally, although defendants claimed to have considered plaintiff an independent contractor, they did not treat her as one under the tax laws, nor did they provide plaintiff with a 1099 tax form or discuss her with their tax preparer. (Leah Rifkin Dep., at 156; Terry Rifkin Dep., at 63-64.) Viewing the evidence in a light most favorable to the plaintiff, a reasonable jury could conclude that defendants were either aware that they were not paying the proper wages or showed reckless disregard for whether their conduct was subject to the FLSA. *See, e.g., Herman v. RSR Sec. Servs.*, 172 F.3d 132, 142 (2d Cir. 1999) (finding willfulness where defendant had knowledge of FLSA requirements and knew employees had been misclassified as independent contractors); *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 41 (2d Cir. 1995) (finding defendant's failure to pay overtime a willful violation where defendant believed plaintiffs were exempt under the FLSA); *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 870 (S.D.N.Y. 1984) ("All that is required [to make a determination of willfulness] is that the employer knew or had reason to know that it was or might have been subject to the FLSA."). Therefore, because there are disputed issues of fact with respect to willfulness, defendants' attempt to obtain summary judgment on this issue is denied. Accordingly, to the extent plaintiff asserts FLSA claims from November 17, 2003 to December 8, 2005, those claims could be timely under the FLSA's three-year statute of limitations if a willful violation is found at trial (where the complaint was filed on November 17, 2006).

Defendants also contend that, even applying the three-year statute of limitations under the FLSA, plaintiff's federal FLSA claims dating back to June 1993 (when plaintiff was hired) are time-barred.

Plaintiff does not disagree that those claims prior to mid-2003 are well beyond the FLSA's statute of limitations, but instead argues that the Court should apply equitable tolling. "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). However, the doctrine should only be applied "in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citation omitted). "Equitable tolling is generally considered appropriate in situations where the complainant has 'actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Jacobsen v. The Stop & Shop Supermarket Co.*, No. 02 Civ. 5915 (DLC), 2004 WL 1918795, at *3 (S.D.N.Y. Aug. 27, 2004) (quoting *Irwin v.*

*Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)); *accord Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993). Courts have found extraordinary circumstances to exist if an employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action, *see Miller v. Int'l Tel. and Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), or if the defendant concealed from the plaintiff the existence of the cause of action, *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001) (explaining that statute of limitations begins to run when Plaintiff either acquires actual knowledge of facts comprising his claim or should have acquired such knowledge through reasonable diligence) (citing *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985)).

The Second Circuit has considered two factors in determining whether equitable tolling is applicable:

> [W]hether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.

*Zerilli-Edelglass*, 333 F.3d at 80-81 (citation omitted).

With respect to equitable tolling, plaintiff relies in part upon defendants' undisputed failure to comply with the posting of statutorily required notices regarding wages and overtime. *See* 29 C.F.R. § 516.4 ("Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy."); 12 N.Y.C.R.R. § 142-2.8 ("Every employer covered by this Part shall post in a conspicuous place in his or her establishment a notice issued by the Department of Labor summarizing minimum wage provisions."). Defendants contend that, although it is undisputed that they failed to comply with the regulations to provide notice, that failure alone is insufficient to warrant equitable tolling and therefore, summary judgment is appropriate.

Whether the failure to disclose or post a notice in and of itself is sufficient to warrant equitable tolling has not been addressed by the Second Circuit. Moreover, other circuit courts, as well as district courts in this Circuit, disagree on this issue. *Compare Archer v. Sullivan County*, Nos. 95-5214, 95-5215, 1997 WL 720406, at *4 (6th Cir. Nov. 14, 1997) ("We are not persuaded that the [employer's] failure to post such a notice justifies invocation of the tolling doctrine."), *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 n.5 ("Although the failure of the employer to display the poster may toll the 180-day notification period, it will not normally toll the two-year statute of limitations for bringing the action in court, which continues to run from the date of the alleged wrongful act.") (citing *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1530-31 (11th Cir. 1983)), and *Ramirez v. CSJ & Co.*, No. 06 Civ. 13677 (LAK), 2007 WL 1040363, at *3 (S.D.N.Y. Apr. 3, 2007) (refusing to pronounce that the failure to

post a notice, in and of itself, warrants equitable tolling), *with Bonham v. Dresser Indus.*, 569 F.2d 187, 193 (3d Cir. 1977) (holding that "failure to post the required notice will toll the running of the 180-day [statute of limitations] . . ."), *Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324, 328 (E.D. Pa. 1984) ("An employer's failure to post a statutorily required notice [under the FLSA] tolls the running of any period of limitations."), and *Cisneros v. Jinny Beauty Supply Co.*, No. 03 C 1453, 2004 WL 524482, at *1 (N.D. Ill. Feb. 6, 2004) (agreeing that employer's failure to post a notice required by 29 C.F.R. § 516.4 tolls the FLSA statute of limitations until an employee acquire a general awareness of his rights).

However, in the instant case, this Court need not decide that issue at this juncture because plaintiff has asserted other disputed facts and circumstances (discussed *supra* with respect to the willfulness issue) that she contends demonstrate conduct by defendants reflecting a conscious attempt to conceal from plaintiff both her rights under the law, as well as the factual information regarding her hours that would allow her to understand that she had a legal claim. Defendants counter that plaintiff has unclean hands because of her failure to properly report her wages on her tax returns. These disputed facts regarding the conduct of both parties and the intent behind such conduct create material issues of fact relating to the propriety of equitable tolling that cannot be resolved on summary judgment. Therefore, plaintiff's motion for summary judgment on statute of limitation grounds as to the FLSA claims is denied.[2] *See Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 439 (D.N.J. 2001) (finding that plaintiff had raised a genuine issue of material fact with respect to equitable tolling where employer repeatedly assured plaintiff that overtime compensation provided was proper and employer failed to post notice informing employees of their minimum wage and overtime pay rights).

B. Overtime Pay Under the FLSA

Defendants argue that the undisputed facts show that plaintiff did not perform overtime work – hours in excess of 40 per week – between mid-2003 and December 8, 2005, and, therefore, she is not entitled to compensation for unpaid overtime in violation of the FLSA. [3]

---

[2] The Court understands that at trial, in addition to these factual issues regarding equitable tolling and willfulness as it relates to the applicability of the statute of limitations, there will also be issues of fact and law with respect to the applicability of the "domestic servant" exemption, which may apply for plaintiff's earlier period of employment. *See* 29 U.S.C. § 213(b)(21) (stating as exempt from FLSA overtime requirements "any employee who is employed in domestic service in a household and who resides in such household"); *see also Manliguez v. Joseph*, 226 F. Supp. 2d 377, 388 (E.D.N.Y. 2002) (finding that plaintiff was considered a domestic servant and, therefore, not entitled to overtime compensation under FLSA); *Almeida v. Aguinaga*, 456 F. Supp. 2d 505, 508 (S.D.N.Y. 2006) (same).

[3] Defendants also argue that plaintiff is not entitled to unpaid wages during mid-2003 and December 8, 2005 because defendants paid plaintiff well in excess of the minimum wage. (Defs.' Br., at 12.) Plaintiff concedes in her response brief, and at oral argument, that she is

Under the FLSA, workers receive overtime compensation of 1 ½ times their hourly rate for each hour in excess of 40 hours per week. 29 U.S.C. § 207(a)(1).[4] In calculating plaintiff's hours per week, defendants allege that, between mid-2003 and December 8, 2005, plaintiff would arrive at work on Monday, Tuesday, Wednesday, and Thursdays between 8:30 a.m. and 9:00 a.m. and would leave between 4:30 p.m. and 5:30 p.m. Using these numbers, defendants estimate plaintiff worked at most approximately nine hours a day, which would equal approximately thirty-six hours per week. Moreover, defendants argue that plaintiff took a variety of breaks throughout the day, including a daytime break of one hour, a brief breakfast/coffee break in the morning, and a lunch break from 2:00 p.m. to 3:00 p.m. Defendants conclude from this evidence that plaintiff never worked in excess of forty hours during any week and, therefore, defendants do not owe plaintiff any unpaid overtime.

However, plaintiff disputes these facts. Plaintiff testified repeatedly during her deposition that her work schedule was from Tuesday morning though Saturday afternoon. (*See* Ramirez Dep., at 33, 35-36, 48, 63-64.) Specifically, she testified that on Fridays she would continue working past 5:30 p.m. to prepare the food for the family's Friday Sabbath dinner and Saturday lunch, clean up after those family meals, sleep over on Friday nights, and would leave for her own home on Saturday afternoon. (Ramirez Dep., at 33, 35, 48, 64.) This testimony was corroborated by both Leah Rifkin's and Terry Rifkin's testimony. (Leah Rifkin Dep., at 45-46, 57, 61-62, 71, 116; Terry Rifkin Dep., at 40-41, 83-84.) Defendants stated themselves that plaintiff worked Tuesday, Wednesday, Thursday, and Friday during the day, and then Friday evenings and Saturdays until early afternoon. (*See* Defs.' Interrog., Exh. D ¶ 3.) Leah Rifkin also testified that plaintiff would sleep at defendants' home on some Tuesday, Wednesday, and Thursday nights "[i]f she was needed." (Leah Rifkin Dep., at 57.)

Viewing the evidence in a light most favorable to the plaintiff, the Court finds that there are triable issues of fact for trial. Specifically, a reasonable jury could find that plaintiff worked well over forty hours per week, especially if they fully credit the testimony describing the alleged Friday night and Saturday afternoon work that defendants omitted from their above calculations. Moreover, plaintiff testified that she would also arrive sometimes as early as 8:00 a.m. and work late on various other weeknights when asked. Furthermore, defendants do not dispute that they did not pay plaintiff overtime.

---

not claiming a minimum wage violation for that period. (Pl.'s Resp., at 6; *see also* Oral Argument Tr., June 6, 2008.) Therefore, plaintiff's federal and state minimum wage claims extend only from June 1993 to mid-2003.

[4] 29 U.S.C. § 207(a)(1) states: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

To the extent defendants argue that they should be credited for the wages they paid to plaintiff with respect to the value of food, lodging, and phone calls, the Court disagrees. Plaintiff correctly points out that these alleged credits can only be used as set-offs against minimum wage claims, not overtime claims. *See Estanislau v. Manchester Developers*, *LLC*, 316 F. Supp. 2d 104, 108 (D. Conn. 2004); *see also Moon v. Kwon*, 248 F. Supp. 2d 201, 233 (S.D.N.Y. 2002) ("[T]he value of those benefits cannot legitimately be applied under FLSA as a credit against any overtime compensation to which [plaintiff] may be entitled any more than the rest of his weekly salary can be so applied."). As discussed above, plaintiff only asserts an overtime claim during this time period (post mid-2003). Therefore, any credit arguments are not applicable under these circumstances. [5]

In addition to arguing non-payment of wages under the FLSA, plaintiff also asserts in her fourth cause of action an alleged failure by defendants to maintain employment records. Section 211(c) provides, in pertinent part:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. 211(c).[6] Defendants do not dispute that they did not preserve such records as required under federal and state law. (*See* Leah Rifkin Dep., at 149-53, 155-56; Terry Rifkin Dep., at 57, 59-65.) Plaintiff acknowledges that such a violation does not result in a penalty. (*See* Pl.'s Resp., at 6.) It is well-settled that the failure by defendants to keep the required records with respect to the employees has an impact

---

[5] Plaintiff also argues that such alleged credits would increase the amount of overtime by increasing plaintiff's "regular rate" of pay upon which her overtime rate is based. (Pl.'s Resp., at 10.) However, given that the Court finds that plaintiff has sufficiently presented triable issues of fact on her overtime claim, as discussed above, the Court need not address whether there is a factual basis to apply such credits at this juncture.

[6] The Code of Federal Regulations explains how such record-keeping requirements specifically apply to domestic service employees. *See* 29 C.F.R. § 552.110 ("The general recordkeeping regulations are found in part 516 of this chapter and they require that every employer having covered domestic service employees shall keep records which show for each such employee: (1) Name in full, (2) social security number, (3) address in full, including zip code, (4) total hours worked each week by the employee for the employer, (5) total cash wages paid each week to the employee by the employer, (6) weekly sums claimed by the employer for board, lodging or other facilities, and (7) extra pay for weekly hours worked in excess of 40 by the employee for the employer. No particular form of records is required, so long as the above information is recorded and the record is maintained and preserved for a period of 3 years.").

on the proof required of plaintiff. Specifically, where an employer does not keep accurate or adequate records of employee hours and wages, plaintiff, in an action to recover wages due employees, carries her burden of proof by producing "sufficient evidence to show the amount and extent of . . . [uncompensated] work as a matter of just and reasonable inference." *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *reh'g denied*, 329 U.S. 822 (1946), *superseded by statute on other grounds as stated in Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66-67 (2d Cir. 1997) (discussing Anderson burden-shifting). The burden then shifts to the employer to show that the inference is not reasonable. *Anderson*, 328 U.S. at 687. If the employer fails to meet this burden, the court may award the damages reasonably inferred, despite the fact that they are only approximate in amount. *Id.* at 687-88; *see also Genarie v. PRD Mgmt., Inc.*, No. 04 Civ. 2082, 2006 WL 436733, at *15 (D.N.J. Feb. 17, 2006) ("Violation of this record-keeping provision does not result in a penalty per se, but an employer's failure to produce evidence of the hours an employee worked and wages paid may result in the court having to approximate damages."). In light of defendants' failure to keep and maintain the records required under federal and state law, the Court finds that rule to be applicable here.

In sum, given plaintiff's testimony that she worked more than forty hours per week (which is assumed to be true for purposes of defendants' motion) and taking into account the fact that defendants did not preserve plaintiff's employment records as required under federal and New York State law – including time cards and wage sheets – the Court denies summary judgment on plaintiff's FLSA overtime claims and finds that there are triable issues of fact for the jury.

C. State Law Claims for Wages and Overtime Pay

Plaintiff also maintains state law claims under N.Y. Labor Law §§ 650 *et seq.* for minimum wage and overtime.[7]

The FLSA specifically states that it "does not . . . pre-empt state regulation of wages and overtime if the state's standards are more beneficial to workers." *Manliguez,* 226 F. Supp. 2d at 388; 29 U.S.C. 218(a) ("No provision of this chapter or of any order there-under shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter."). The New York State statute of limitations for claims for unpaid overtime compensation is six years, regardless of whether the employer acted willfully or not. N.Y. Labor Law § 663(3). Federal district courts have consistently applied the six-year statute of limitations to New York State Labor Law claims. *See Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 338 (S.D.N.Y. 2005); *Moon*, 248 F. Supp. 2d at 231-32.

---

[7] As discussed above, plaintiff's minimum wage claims relate only to the period prior to mid-2003.

However, federal district courts apply the same standard for equitable tolling of state labor law claims as for tolling FLSA claims. *See Gustafson*, 171 F. Supp. 2d at 323. Here, plaintiff's state law claims date back to June 1993, whereas the complaint was filed November 17, 2006. Therefore, all of plaintiff's state law claims prior to November 17, 2000 would be untimely under the New York Labor Law's six-year statute of limitations. However, as discussed above with respect to the FLSA claims, plaintiff has raised genuine issues of fact relating to the appropriateness of equitable tolling that cannot be resolved on summary judgment. As discussed *supra*, plaintiff has sufficiently presented disputed issues of material fact for a jury as to overtime during the period of mid-2003 until December 8, 2005. Accordingly, defendants' motion for summary judgment as to plaintiff's state law claims for overtime is similarly denied.

Defendants have not sought to demonstrate whether genuine issues of fact exist as to all of plaintiff's claims prior to mid-2003 – including minimum wage and overtime claims under the FLSA and NYLL, as well as a spread of hours claim under NYLL. Given that the Court finds that plaintiff's equitable tolling arguments survive summary judgment, and that issues of fact exist as to the amount of time plaintiff worked both prior to mid-2003 (for all claims) and after mid-2003 (for all overtime claims), all of plaintiff's claims prior to mid-2003 also survive summary judgment.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part.

Defendants' motion is GRANTED with respect to all federal and state minimum wage claims from mid-2003 to December 8, 2005. Defendants' motion is DENIED as to all other claims.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 23, 2008
Central Islip, New York

* * *

The attorneys for plaintiff are Christopher D. Lamb, Esq., Hollis V. Pfitsch, Esq., and Richard E. Blum, Esq. of The Legal Aid Society, Employment Law Project, 199 Water Street, 3rd Floor, New York, New York 10038. The attorney for defendants is Paul L. Dashefsky, 317 Middle Country Road, Smithtown, New York 11787.