**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

REINA RAMIREZ,

                        Plaintiff,

      vs.

TERRY RIFKIN and LEAH RIFKIN,

                    Defendants.

**Case No. 06 CV 6169 (JFB) (WDW)**

**PLAINTIFF'S PRETRIAL MEMORANDUM OF LAW**

THE LEGAL AID SOCIETY
Steven Banks, Attorney in Chief
Scott Rosenberg, Attorney in Charge,
   Law Reform, Civil Practice (SAR 5579)
Richard Blum, of Counsel (REB 0533)
Hollis Pfitsch, of Counsel (HP 0522)
199 Water Street, 3d Floor
New York, New York  10038
212-577-3300

Attorneys for Plaintiff

## PRELIMINARY STATEMENT

Reina Ramirez seeks unpaid wages and liquidated damages for work that she performed during the twelve-and-a-half years, June 1993 to December 2005, that she was employed by the defendants, Leah and Terry Rifkin in their home.  Her schedule during that period changed in 2003.  As a result, her work is most conveniently divided into two periods of time.

For the last two-and-a-half years in the Rifkin's employ, mid-2003 to December 2005, Ms. Ramirez worked around 45 hours per week;  she received $380 per week for most of that time, ending with pay of $400 per week.  During that period, Ms. Ramirez never received overtime pay for the hours she worked in excess of 40 per week, in violation of federal and state overtime laws.  She also never received spread-of-hours pay under state labor law for Fridays, and occasionally other nights, when she worked more than 10 hours, staying over at the Rifkin's house to complete her work.  Ms. Ramirez is seeking overtime and spread-of-hours pay for the period mid-2003 to December 2005, and liquidated damages under both federal and state law. The state statute of limitations for such claims is six years, which covers the entire two-and-one-half year period.  The federal statute of limitations is three years, because defendants' conduct was willful.  This covers most of the period.  For the remainder, recovery is available through equitable tolling of the statute of limitations, because of "conduct by defendants reflecting a conscious attempt to conceal from plaintiff both her rights under the law, as well as the factual information regarding her hours that would allow her to understand that she had a legal claim." *Ramirez v. Rifkin,* 568 F. Supp. 2d 262 (E.D.N.Y. 2008).

The second period of time spans the years from June 1993 to mid-2003.  During that time period, Ms. Ramirez commuted from her home in the Bronx on Tuesday mornings and stayed at the Rifkin's house until Sunday morning, working around 65 hours per week for $300 to $360 per week.  Throughout that period, Ms. Ramirez received no overtime pay for the hours she

worked over 40 per week and she received no spread of hours pay for the five days per week when she worked over ten hours in a day.  Defendants claim that Ms. Ramirez is not owed overtime pay under federal law for that period, alleging that she "resided" at the Rifkin's home.  However, Ms. Ramirez did not "reside" in the Rifkin's home within the meaning of federal and state wage and hour laws.  Throughout that time, Ms. Ramirez continued to return every week to the apartment in the Bronx that she shared and continues to share with family members and for which she paid rent.  In any event, under state law, residential domestic workers are entitled to overtime pay at one-and-a-half times the minimum wage for work in excess of 44 hours in a week.  She never received such overtime pay.  Moreover, equitable tolling applies to the periods that precede the state statute of limitations period and with respect to the federal statute of limitation.

At no time during Ms. Ramirez's employment with the Rifkins did they keep any records of Ms. Ramirez's pay or hours, as required by a regulation explicitly concerning domestic workers.  Therefore, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.680, 687 (1946), it is their burden to prove that Ms. Ramirez's recollections of her pay and hours are incorrect.

## STATEMENT OF FACTS

Reina Ramirez was employed by defendants as a domestic worker from June 1993 until December 2005.  Proposed Findings of Fact ("PFOF") at ¶ 1.  For the last two-and-a-half years of her employment, Ms. Ramirez worked on average around 45 hours per week.  She worked five days a week, arriving between 8 and 9 a.m. on Tuesdays, Wednesdays, and Thursdays, and Fridays, and leaving between 4:30 and 5:30 p.m. on Tuesday through Thursday.  On Fridays, she worked late, cleaning up after dinner, and stayed at the Rifkin's house until Saturday.  On Saturdays, she worked until late afternoon and went home.  Ms. Ramirez worked continuously

throughout each work day, with only short breaks when her work allowed.  On Fridays, she worked longer than 10 hours.  PFOF at ¶¶ 5-8.

During this time period, Ms. Ramirez was initially paid $360 per week, then $380 per week, and for the last few months of her employment, she was paid $400 per week.  PFOF at ¶¶ 26-28.

During the first ten years of her employment with the Rifkins, Ms. Ramirez worked an average of around 65 hours per week.  On Tuesdays, Ms. Ramirez commuted to the Rifkin's house from her home in the Bronx.  She arrived at the Rifkin home on Tuesdays generally between 8 a.m. and 9 a.m.  She stayed at the Rifkin's home until Sunday morning, starting her other workdays at about 6:30 a.m. and finishing at about 9 p.m.  She took a break in the afternoon when she could, sometimes a half-hour, occasionally an hour.  The interval between her start time and end time usually exceeded ten hours.  PFOF at ¶¶ 9-12.

Ms. Ramirez ate her meals at the Rifkin home during this period.  At times, she also used their telephone to make international calls.  PFOF at ¶¶  34-37.  She was paid between $300 and $360 per week. PFOF at ¶ 26.

There is no dispute that Ms. Ramirez's work at the Rifkin home included at least the following:  dusting, vacuuming, mopping, sweeping, cleaning the bathrooms, laundry, ironing, which she did in her room, washing the vegetables, putting away groceries, towards the end preparing Sabbath dinner, cleaning up after lunch on Saturdays, making beds each day between Tuesday and Friday, putting closets in order, cleaning up after parties, wiping the outdoor furniture when it was used, taking trash out to the garage and then out for pick-up twice a week, preparing rooms for guests on holidays and occasional weekends, providing water and food for the dog, cleaning up after the dog, which had been trained to urinate and defecate on a pad in the

corner of a room, occasionally bathing the dog, waiting for deliveries, sewing labels in socks, cleaning the playroom in the basement, watering the plants about once a week, cleaning out the refrigerator, cleaning a crystal lamp and a chandelier, cleaning the silver in the house every two to four weeks, unpacking clothes when the family returned from vacation or camp, and doing laundry for visiting relatives.  On Saturday nights, during the first ten years of her employment, she watched the Rifkin children when the parents were out.  PFOF at ¶¶ 13-22.

Throughout her employment, the Rifkins paid Ms. Ramirez a flat weekly rate in cash. Defendants never paid Ms. Ramirez overtime or spread of hours pay.   PFOF at ¶¶ 23-25.  The Rifkins never kept any records of Ms. Ramirez's hours of work or pay.  PFOF at ¶¶ 32-33.  They knew the employment laws and willfully ignored their requirements. PFOF at ¶¶ 40-41. They did not provide Ms. Ramirez with information from which she would know if her rights had been violated.  PFOF at ¶¶ 42-44.  They did not withhold any taxes from Ms. Ramirez's pay, report her wages on their tax returns, or provide her with any tax forms.  PFOF at ¶¶ 45-51.  Ms. Ramirez was not aware of her right to receive overtime or spread of hours pay.  PFOF at ¶¶ 55-56.

Throughout her employment with the Rifkins, Ms. Ramirez continued to live in the same apartment that she had moved into before she went to work for them and where she still lives. She has always shared the apartment with family members, and she has always paid a portion of the rent for the apartment.   When Ms. Ramirez stayed over at the Rifkins, she stayed in a room next to the kitchen and laundry room where she worked.  PFOF at ¶¶ 29-31.

## APPLICABLE LAWS

The following provisions of law apply in this case.  Defendants have not stipulated that they apply and therefore each issue may be contested:

- 4 -

1. Overtime pay requirements under the Fair Labor Standards Act, 29 U.S.C. § 207(a), and the New York Labor Law, 12 N.Y.C.R.R. § 142-2.2 (time-and-a-half of the regular rate to be paid for each hour worked over forty hours per week). Overtime pay requirements for residential domestic service workers (one-and-a-half times the minimum wage for hours over 44 per week), 12 N.Y.C.R.R. § 142-2.2.

2. Definition of employer and employee, 29 U.S.C. §§ 203(d), (e), and (g).

3. FLSA applicable to domestic service, 29 USC. § 202(a), and NYLL applicable to all employer/employee relationships. NYLL § 190(2).

4. FLSA and NYLL claims determined using a week-by-week analysis, by dividing the number of hours worked for each week by the amount of pay for that week, 29 C.F.R. §§ 778.104, 778.109; 12 N.Y.C.R.R. § 142-2.2, 2.9.

5. Interrupted breaks are compensable, 29 C.F.R. § 785.19.

6. Rest periods of 5-20 minutes are compensable, 29 C.F.R. § 785.18.

7. Work not requested but suffered or permitted compensable work time.  29 C.F.R. § 785.11.

8. Spread of hours pay requirements under New York Labor Law §§ 190, *et seq.*, 650, *et seq.*, and 12 N.Y.C.R.R. §§ 137-1.6, 142-2.4 (one hour's pay extra to be paid for each day in which the interval between an employee's start time and end time exceeds ten hours).

9. Employers' requirement to maintain accurate and complete records under the Fair Labor Standards Act, 29 U.S.C. §§ 211(c), 215(a)(5), 29 C.F.R. § 552.110 (domestic workers), 29 C.F.R. § 516.2, and New York Labor Law § 195(4), 12 N.Y.C.R.R. § 137-2.1.

10. Burden-shifting where there are no records, under *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946); *Ramirez v. Rifkin,* 568 F. Supp.2d at 272-73.

11. Employers required to post and/or provide information about employee's rights under federal and state employment laws, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.4, 552.110; 12 N.Y.C.R.R. § 142-2.8.

12. Entitlement to liquidated damages: failure to follow the requirements of the Fair Labor Standards Act in good faith makes liquidated damages of 100% mandatory; willful violation of New York Labor Law § 663 warrants 25% in liquidated damages.

13. Equitable tolling of the Fair Labor Standards Act and the New York Labor Law is a factual issue to be determined by the trier of fact.  *Ramirez*, 568 F. Supp.2d at 270.

14. Three-year federal statute of limitations due to a willful violation, 29 U.S.C. § 255(a).

15. Six-year state statute of limitations, NYLL § 198(3).

16. Credits, *e.g.*, for meal and lodging, 29 C.F.R. § 552.100; 12 N.Y.C.R.R. § 142-2.4, do not off-set for overtime claims, and increase the value of the regular rate of pay upon which the overtime rate is based, 29 C.F.R. § 778.116; 29 C.F.R. § 778.202 *Estanislau v. Manchester Developers*, 316 F. Supp. 2d 104, 108 (D. Conn. 2004); *Moon v. Kwan*, 248 F. Supp. S 201, 232-33 (S.D.N.Y. 2002);  *see Ramirez,* 568 F. Supp.2d at 271-72.

17. Except for meal and lodging credits, employer must maintain records to claim an amount other than the statutory credit, 29 C.F.R. § 552.100; 12 NYCRR § 142-2.5.

18. Reasonable cost of any facilities provided by employers is not more than the actual cost, 29 C.F.R. §§ 531.3(d).

### ARGUMENTS

**A.      Compensable Work**

Relying on cases that are completely inapposite, defendants raise several defenses that are inapplicable here.  For example, defendants cite to a case under the Portal-to-Portal Act, an act that concerns compensable and non-compensable commuting time.  *Reich v. New York Ctiy Transit* Authority, 456 f.3d 646 (2d Cir. 1995).  Commuting time is not an issue in this case.  Normally time commuting to a job is not compensable.  In the case cited, the employee argued that he had some work responsibilities during the commute, but the court found these duties to be *de minimis*.  Leaving aside that on the factual record here, Ms. Ramirez's work could hardly be characterized as *de minimis*, the case cited by defendants applies to commuting, an issue not in dispute in this case.

Defendants give no examples of allegedly *de minimis* work by Ms. Ramirez.  Ms. Ramirez is not claiming credit for having performed a few minutes of work here or there outside of her regular compensable work time, as in the *de minimis* doctrine cases.  That she performed a vast array of work activities over the course of many hours each day and week does not make her work non-compensable as *de minimis*.  What is relevant under the FLSA is the time that she

spent working, not the amount of time it took her to perform any given activity within her workday.

Similarly, defendants suggest that Ms. Ramirez's work is not compensable because it somehow may have been "motivated primarily by her own pleasure," or that she extended her work time to inflate earnings.  These suggestions cannot be reconciled with any facts in this case.  Defendants point to no examples of work that Ms. Ramirez did for her own pleasure or that she extended to inflate earnings.  Indeed, since it is undisputed that she was paid a flat rate on a weekly basis, extending her work would not have inflated her earnings.  It just would have made her day longer.  Since defendants never met their legal obligations to inform her of her right to overtime and spread-of-hours pay, she could not have known that there would be any advantage in taking more time to perform her assigned tasks.

The decision cited by defendants has nothing to do with the facts or laws at issue here.  *Holzapfel v. Town of Newburgh, NY,*  145 F.3d 516 (2d Cir. 1998).  That case concerned a public employee who voluntarily took care of a work dog on his own time, because he wanted to.  Ms. Ramirez does not raise claims concerning activities she performed when not at work.  Defendants omit from their discussion of the decision that it states clearly that "if the employee was devoting the allegedly excessive time to the task primarily for the employer's benefit, then the employee has satisfied his burden . . . ."  *Id.* at 523.

In addition, defendants try to pull out from *Holzapfel*  a sweeping exemption in cases where the employer did not know of the employee's work hours.  *Holzapfel* concerned work performed off site.  The other cases cited concerned employees who misstated their hours on time cards.  Nothing about those facts resembles this case.  Ms. Ramirez performed her job tasks on site.  She had no opportunity to report her hours; she did not even know that she should be

paid by the hour, so, as set forth above, working longer hours would not have offered her any reward.  Defendants' attempt to import principles from an utterly different context stretches those principles beyond recognition.  There is nothing in *Holzapfel* or the other cases cited that concerns work performed on site during the work day.  That the Rifkins did not know Ms. Ramirez's precise hours in that setting simply points to their failure to keep track of their employee's work hours, in violation of labor laws cited above.  It is not a defense.

**B.      Domestic Service Exemption**

The FLSA only exempts domestic workers from the overtime pay requirement if they "reside" in their employer's home.  29 U.S.C. § 213 (b)(21); 29 C.F.R. § 552.100.  The New York Labor Law requires overtime pay for hours worked by residential domestic service workers over forty-four hours per week, at the rate of one-and-a-half times the basic minimum hourly rate.  12 N.Y.C.R.R. § 142-2.2.  Defendants have the burden of proof to establish any exemption. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97 (1974).

Defendants try to deny Ms. Ramirez her overtime pay by arguing that she "resided" in the Rifkin's house, even when she only stayed one night per week.  Ms. Ramirez did not "reside" in the Rifkin's house within the meaning of federal and state wage and hour laws.  Defendants' argument ignores the law on exemptions and on the weekly framework for all FLSA calculations.

"[E]xemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."  *Arnold v. Ben Kanowsky, Inc*., 361 U.S. 388, 392 (1960).  Courts have found the application of the domestic servant exemption to be extremely narrow.  For example, where a worker performs some work in another home outside of the one in which she lives and which is

her primary place of employment, the exemption does not apply.  *E.g., Zirintusa v. Whitaker*, 05 Civ. 1738, 2007 WL 30603, at *6 (D.D.C. Jan. 3, 2007) (motion for judgment on the pleadings denied).  Similarly, where a worker does not exclusively perform domestic duties, the exemption does not apply.  *E.g., Astudillo v. U.S. News & World Report*, 02 Civ. 7902, 2004 WL 2075179, at *3 (S.D.N.Y. Sept. 17, 2004) (motion for summary  judgment denied).  In both of the cases cited in this Court's opinion denying Defendants' summary judgment motion, the question of whether the employee at issue was a "residential" employee was not contested.  *See Manliguez v. Joseph,* 226 F.Supp.2d 377, 388 (E.D.N.Y. 2002); *Almeida v. Aguinaga,* 456 F.Supp.2d 505, 508 (S.D.N.Y. 2006).

In short, when a worker performs some non-exempt work during the week, the exemption cannot apply.  As noted above, FLSA calculations are always by the week, not the day.  Thus, defendants cannot establish an exemption for the one night per week that Ms. Ramirez stayed over in her last two-and-a-half years.

Moreover, even during the earlier period, Ms. Ramirez did not "reside" in defendants' home and therefore, no overtime exemption applies.  29 U.S.C. § 213 (b)(21)(21); 29 C.F.R. § 552.100.  None of the indices of residence are present in this case.  Ms. Ramirez maintained her own apartment in the Bronx throughout her employment with Defendants, returned to her own home on all of her free days and on any evening she was not required to stay by Defendants, and stayed at her own home when Defendants took vacation away from the house.  When Ms. Ramirez slept overnight at Defendants' home, she slept in a room off of the kitchen, next to the laundry room.  This room was also a work area, where she folded laundry and ironed clothes for Defendants, and where clean laundry was stored.  The bathroom she had access to was also used by people in the Rifkin family and their visitors.  She was not provided with private amenities

like a personal phone or living space separate from where she slept and worked.  Because of the

Defendants' religious observances, Ms. Rifkin was not allowed to bring in any of her own food.

Given the facts of this case, Defendants cannot meet their burden to establish that Ms.

Ramirez is exempt from receiving overtime pay under the FLSA or overtime pay at time-and-a-

half of her regular rate over 40 hours under the NYLL.

## C.    Willfulness:  Federal Statute of Limitations and State Liquidated Damages

As noted above, a three-year statute of limitations applies under the FLSA if the

violations were willful.[1]  The Court has already set forth the criteria for finding willfulness in

this case.  "For an employer's actions to be willful, the employer must have 'either [known] or

showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"

*Ramirez,* 568 F. Supp. 2d at 268.  The facts demonstrate that defendants' violations were willful.

Defendants did not maintain records for Ms. Ramirez, instead paying her a flat rate on a weekly

basis with no receipts.  Defendants did not withhold taxes or report the wages they paid her on

their tax returns.  Defendants did not give Ms. Ramirez W-2 forms; and although they claimed to

have considered Ms. Ramirez an independent contractor, they did not treat her as one.  PFOF ¶¶

at 45-51.   In its prior decision in this case, this Court held that a reasonable fact finder "could

conclude that defendants were either aware that they were not paying the proper wages or

showed reckless disregard for whether their conduct was subject to the FLSA."  *Ramirez,* 568 F.

Supp. 2d at 268 (citations omitted).  Given that these facts are not in dispute, see PFOF at ¶¶ 32-

51, a finding of willfulness is required here.

---

[1]  Under state law, liquidated damages of 25% are available when the violations are willful.  Defendants' citation on
this point is to a case that does not address this issue.

**D.      Equitable Tolling**

The Court has already held that equitable tolling of the statutes of limitation may apply here. *Ramirez*, 568 F. Supp.2d at 269-270.  After noting some disagreement on whether failure to post employment rights as required under federal and state law is sufficient to warrant equitable tolling, the Court addressed the other factors at issue in this case.  Specifically, the Court found that Ms. Ramirez had asserted other facts, discussed above with respect to willfulness, that demonstrate "conduct by defendants reflecting a conscious attempt to conceal from plaintiff both her rights under the law, as well as the factual information regarding her hours that would allow her to understand that she had a legal claim." *Id*. at 270.

Defendants have tried to evade their responsibilities by pointing to Ms. Ramirez's tax returns, arguing that she had unclean hands.  However, this strategy should be rejected.  Whether or not there are errors in Ms. Ramirez's tax returns has nothing to do with whether Defendants owe Ms. Ramirez for wage and hour violations.  *See Smiling Irishman, Inc. v. McDonald*, 52 N.Y.S.2d 211, 214 (N.Y. Sup.Ct. 1944) ("If [plaintiff] is not guilty of inequitable conduct toward the defendant in the transaction, his hands are *as clean* as the court can require.") (emphasis in original); *see also Groves v. Patricia J. Dury*, 06 Civ. 388, 2006 WL 2556944 (M.D. Fla. Sept. 1, 2006).  Further, it is defendants' illegal conduct that deprived her of proper wage reporting instruments, and defendants who lack clean hands with respect to the claims before this Court.

Defendants now argue that Ms. Ramirez's use of tax preparers somehow means that she should have known her rights under labor laws.  This argument is nothing more than a *non-sequitur*.  There is no reason to expect tax preparers to advise their clients on their labor rights.  When Ms. Ramirez did ultimately learn of her labor rights, she acted diligently to bring this action.

**E.      Defendants' Liability for Overtime Pay**

All estimates of hours are based on mid-range points given the routine small variations in schedule.  For example, where Ms. Ramirez usually worked from between 8 a.m. and 9 a.m. to between 4:30 p.m. and 5:30 p.m., the daily estimate is based on an 8:30 a.m. to 5 p.m. schedule.

These estimates are based on two weeks of vacation per year.  Time periods are chosen to correspond to changes in wage rates over time.

Overtime pay owed per hour is calculated by dividing the weekly pay including credits by the total number of hours worked each week and dividing in half in order to calculate the unpaid "half" of the requirement to pay time-and-a-half of the regular rate, as outlined in the regulations cited above.

Overtime pay owed per week is calculated by multiplying the overtime pay owed per hour by the number of overtime hours specified for that time period.

Total owed per time period is calculated by multiplying the overtime pay owed per week by the number of weeks specified in the time period column.

Weekly pay including credits under the federal law includes only a meal credit under federal law, that is, the regulatory per-meal credit as outlined in 29 C.F.R. § 552.100.  No lodging credit under federal law is included here.  The amount to be allocated for a federal lodging credit requires a fact-laden analysis based on information to be developed at trial primarily from Defendants' testimony.  Inclusion of the federal lodging credit will boost the recovery calculated here (because it will boost the amount of overtime owed), so exclusion of this figure is to the benefit of the defendants.  State law, unlike federal law, includes a lodging credit specified in the regulations.  Therefore, weekly pay including credits under the state law includes both the regulatory meal and lodging credits.  The meal credit calculations assume two

- 12 -

meals a day in the mid-2003 to Dec. 8, 2005 period and three meals a day in the June 1993 to mid-2003 period.  The lodging credit calculations assume one night of lodging provided in the mid-2003 to Dec. 8, 2005 period and five nights of lodging provided in the June 1993 to mid-2003 period.

<u>Federal Law – mid-2003 to Dec. 8, 2005</u>

| Time period year (weeks) | Hours worked per week | Over-time Hours | Weekly pay including credits | Overtime pay owed per hour | Overtime pay owed per week | Total owed per time period | Liquidated damages owed per year -100% |
|---|---|---|---|---|---|---|---|
| 2003 (25) | 44.5 | 4.5 | $398.63 | $4.48 | $20.16 | $504.00 | $504.00 |
| 2004 (50) | 44.5 | 4.5 | $418.63 | $4.48 | $20.16 | $1008.00 | $1008.00 |
| 2005 (43) | 44.5 | 4.5 | $418.63 | $4.70 | $21.17 | $910.31 | $910.31 |
| 11-12/2005 (4) | 44.5 | 4.5 | $438.63 | $4.93 | $22.18 | $88.72 | $88.72 |
| **Total** | | | | | | **$2511.03** | **$2511.03** |

<u>State Law – mid-2003 to Dec. 8, 2005</u>

| Time period year (weeks) | Hours worked per week | Over-time Hours | Weekly pay including credits | Overtime pay owed per hour | Overtime pay owed per week | Total owed per time period | Liquidated damages owed per year-25% |
|---|---|---|---|---|---|---|---|
| June-Dec '03 (25) | 44.5 | 4.5 | $379.70 | $4.27 | $19.20 | $480.00 | $120.00 |
| 2004 (50) | 44.5 | 4.5 | $399.70 | $4.49 | $20.21 | $1010.50 | $252.63 |
| 2005 (43) | 44.5 | 4.5 | $399.70 | $4.55 | $20.48 | $880.64 | $220.16 |
| Nov-Dec. '05 (4) | 44.5 | 4.5 | $425.10 | $4.78 | $21.49 | $85.96 | $21.49 |
| **Total** | | | | | | **$2457.10** | **$614.28** |

Federal Law – June 1993 to mid-2003

| Time period year (weeks) | Hours worked per week | Over-time Hours | Weekly pay including credits | Overtime pay owed per hour | Overtime pay owed per week | Total owed per time period | Liquidated damages owed per year-100% |
|---|---|---|---|---|---|---|---|
| June '93-Dec '95 (128) | 64 | 24 | $331.88 | $2.59 | $62.23 | $7965.00 | $7965.00 |
| 1996 (50) | 64 | 24 | $335.63 | $2.62 | $62.93 | $3146.48 | $3146.48 |
| '97-'99 (150) | 64 | 24 | $358.63 | $2.80 | $67.24 | $10086.33 | $10086.33 |
| 2000 (50) | 64 | 24 | $378.63 | $2.96 | $70.99 | $3549.61 | $3549.61 |
| 2001 (50) | 64 | 24 | $378.63 | $2.96 | $70.99 | $3549.61 | $3549.61 |
| 2002 (50) | 64 | 24 | $398.63 | $3.11 | $74.74 | $3737.11 | $3737.11 |
| Jan-May '03 (25) | 64 | 24 | $398.63 | $3.11 | $74.74 | $1868.55 | $1868.55 |
| **Total** | | | | | | **$$33902.69** | **$$33902.69** |

State Law – June 1993 to mid-2003

| Time period year (weeks) | Hours worked per week | Over-time Hours | Weekly pay including credits | Over-time pay owed per hour | Over-time pay owed per week | Total owed per time period | Liquidated damages owed per year-25% |
|---|---|---|---|---|---|---|---|
| June '93-Dec '95 (128) | 64 | 24 | $337.25 | $2.63 | $63.23 | $8094.00 | $2023.50 |
| 1996 (50) | 64 | 24 | $337.25 | $2.63 | $63.23 | $3161.72 | $790.43 |
| '97-'99 (150) | 64 | 24 | $357.25 | $2.79 | $66.98 | $10047.66 | $2511.91 |
| 2000 (50) | 64 | 24 | $377.25 | $2.95 | $70.73 | $3536.72 | $884.18 |
| 2001 (50) | 64 | 24 | $377.25 | $2.95 | $70.73 | $3536.72 | $884.18 |
| 2002 (50) | 64 | 24 | $397.25 | $3.10 | $74.48 | $3724.22 | $931.05 |
| Jan-May '03 (25) | 64 | 24 | $397.25 | $3.10 | $74.48 | $1862.11 | $465.53 |
| **Total** | | | | | | **$$33963.15** | **$$8490.78** |

**F.  Defendants' Liability for Spread of Hours Pay**

Spread-of-hours pay, one extra hour's pay at the minimum wage rate, is required for each

day in which the interval between a worker's start and end times exceeds ten hours, even

including breaks, as explained in the regulations cited above.  Ms. Ramirez is entitled to spread of hours pay for five days per week from June 1993 to mid-2003, and for one day a week from mid-2003 to Dec. 8, 2005.  This amounts to a total of $13,610.20 in unpaid spread-of-hours pay, and $3,402.55 in liquidated damages for a willful violation of that regulation (25%).

**G.      Defendants' Total Liability**

Ms. Ramirez does not seek double recovery.  For each time period, the total recovery would be the recovery under federal law or the recovery under state law, whichever is greater.  However, Ms. Ramirez does seek an award of both the federal and state liquidated damages, as permitted in *Ke v. Saigon Grill*, 2008 WL 1046, at *14-15  (S.D.N.Y. Oct. 21, 2008) (awarding both federal and state liquidated damages because the two statutes serve different purposes).

**CONCLUSION**

For all of these reasons, the Court should grant judgment for Ms. Ramirez for ??, plus costs and fees.

Dated: December 10, 2008
       New York, New York

Respectfully submitted,


 By_____
THE LEGAL AID SOCIETY
Steven Banks, Attorney in Chief
Scott Rosenberg, Attorney in Charge,
 Law Reform, Civil Practice (SAR 5579)
Richard Blum, of Counsel (REB 0533)
Hollis Pfitsch, of Counsel (HP 0522)
199 Water Street, 3d Floor
New York, New York  10038
212-577-3300

Attorneys for Plaintiff